**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 22-cv-00733-REB-NYW

WELLNESS WALK IN TUBS, LLC

　　　Plaintiff,

v.

SCRIPPS MEDIA, INC., d/b/a KOAA TV, d/b/a NOAA TV

　　　Defendant.

---

## ORDER RE: MOTION TO DISMISS

---

**Blackburn, J.**

　　　The matter before me is **Defendant Scripps Media, Inc.'s Motion To Dismiss Plaintiff's Complaint** [#18],[1] filed April 26, 2022. I grant the motion to dismiss, but deny defendant's request that the dismissal be with prejudice.

## I.  JURISDICTION

　　　I have subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

## II.  STANDARD OF REVIEW

　　　In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a).  For many years, "courts followed the axiom that dismissal is only appropriate where 'it appears beyond doubt that the plaintiff can prove

---

[1] "[#18]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

no set of facts in support of his claim which would entitle him to relief.'" ***Kansas Penn Gaming, LLC v. Collins***, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Noting that this standard "has been questioned, criticized, and explained away long enough," the Supreme Court supplanted it in ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 562, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007). Pursuant to the dictates of ***Twombly***, I now review the complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" ***Ridge at Red Hawk, L.L.C. v. Schneider***, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting ***Twombly***, 127 S.Ct. at 1974). "This pleading requirement serves two purposes: to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." ***Kansas Penn Gaming***, 656 F.3d at 1215 (citation and internal quotation marks omitted).

I must accept all well-pleaded factual allegations of the complaint as true. ***McDonald v. Kinder-Morgan, Inc.***, 287 F.3d 992, 997 (10th Cir. 2002). Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not be sufficient to defeat a motion to dismiss. ***Ashcroft v. Iqbal***, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations and internal quotation marks omitted). ***See also Robbins v. Oklahoma***, 519 F.3d 1242, 1247-48 (10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of

the claim, but also 'grounds' on which the claim rests.") (quoting *Twombly*, 127 S.Ct. at 1974) (internal citations and footnote omitted).  Moreover, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S.Ct. at 1949.  *See also Ridge at Red Hawk*, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphases in original).  For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level."  *Kansas Penn Gaming*, 656 F.3d at 1214 (quoting *Twombly*, 127 S.Ct. at 1965).  The standard will not be met where the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent."  *Robbins*, 519 F.3d at 1248. Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Id.*

The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[] the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 129 S.Ct. at 1950; *see also Kansas Penn Gaming*, 656 F.3d at 1215.  Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1965) (internal quotation marks omitted).

### III.  ANALYSIS

This case arises out of a November 2018 contract between plaintiff and defendant for the provision of advertising services.  The contract consists of a one-page introductory letter and an attached "Media Plan," which appears to be a replication of a Power Point presentation.  (***See* Resp. App.**, Exh. 1(a).)[2]  The cover letter stated that defendant practiced "a Guardian culture model," which "means we are looking out for your business at every turn."  Therein, defendant claimed to "place an emphasis on a high level of ethics, accuracy and balance in our news products and our business practices."  (**Amended Complaint** ¶ 8 at 2; **Resp. App.**, Exh. 1(a) at 1.).  Unlike other media companies, which "believe their work is complete when your message is seen or when your prospect visits your website," defendant was "focused on how the advertising impacts your bottom line" and would be "there with you each month to ensure you are hitting your sales goals."  (**Amended Complaint** ¶ 9 at 2; **Resp. App.**, Exh. 1(a) at 1.) Defendant further touted the "decades of combined experience our management team has and . . . their proven trace record of helping local businesses achieve their financial goals" and claimed "the strength of our product, our people and of our processes" gave it "the highest level of renewal of advertising campaigns."  (**Amended Complaint** ¶ 10 at 2-3; **Resp. App.**, Exh. 1(a) at 1.)

Two additional pages of the Media Plan describe defendant's "Reputation Management" services.  Noting that "More accurate and Consistent Business listings

---

[2]  This document, although not attached to the Amended Complaint, is referenced therein and central to plaintiff's claims.  It therefore is properly considered in resolving the motion to dismiss. ***Alvarado v. KOB–TV, LLC***, 493 F.3d 1210, 1215 (10th Cir. 2007); ***United States Olympic Committee v. American Media, Inc.,*** 156 F.Supp.2d 1200, 1204 (D. Colo. 2001).

Helps [sic] a business to rank higher in a search!," defendant allegedly promised, *inter alia*, to "[e]nsure that the information about your business is correct throughout the web" and "Protect Your Reputation" by "[p]revent[ing] negative reviews with the review generation and filtering tool – improve your review score!"  (**Amended Complaint ¶¶** 12-13 at 3; **Resp. App.**, Exh. 1(a) at 10 & 11.)

Plaintiff contends that in April 2019, during the term of the contract, defendant broadcast negative, allegedly inaccurate, news stories about it.  (**See Resp. App.**, Exh. 1(b).)[3]  These news stories allegedly damaged plaintiff's reputation and caused it to lose contracts and hundreds of thousands of dollars in revenue.  This lawsuit, for breach of contract and breach of the implied duty of good faith and fair dealing, followed.

Plaintiff claims the publication of these negative stories constituted a breach of defendant's contractual promise to protect its reputation.  *Matthys v. Narconon Fresh Start*, 104 F.Supp.3d 1191, 1204 (D. Colo. 2015) (setting forth elements of claim for breach of contract).  Under Colorado law (which is applicable in this diversity action, *see Los Lobos Renewable Power, LLC v. Americulture, Inc*, 885 F.3d 659, 668 (10th Cir.), *cert. denied*, 139 S.Ct. 591 (2018)), the terms of a contract "must be examined and construed in harmony with the plain and generally accepted meaning of the words used, and reference must be made to all the agreement's provisions," *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo. 1990).  Given the language of the contract and the context in which the "reputation management" representations were made, I find and conclude that plaintiff has failed to state a facially plausible claim

---

[3]  These stories were published under the auspices of KOAA's "News5 Investigates" series.

for breach of contract.

It is abundantly clear that the parties' contract was for the provision of advertising services. The representations made in the cover letter (to the extent they can be considered actionable terms of the contract, and not mere puffery) repeatedly refer to an "advertising campaign" "focused on how advertising impacts your bottom line," which will provide plaintiff with "the highest quality, largest, most efficient and most effective form of advertising results." (**Resp. App.**, Exh. 1(a) at 1.) Consideration of the provisions of the contract as a whole and in context further bolsters that conclusion. The document sets forth a proposed media strategy centered on getting the "right message" to the "right audience." (*Id.*, Exh. 1(a) at 2-5.) It points out that Google and Walmart spend a substantial portion of their advertising budgets on television and sets forth a proposed broadcast schedule for plaintiff's advertising and suggests that such television advertising will drive potential customers to engage with plaintiff online. (*Id.*, Exh. 1(a) at 7-9.)

It is this context in which defendant agreed to "Protect Your Reputation" by generating positive reviews for the company and monitoring social media for negative reviews. (*Id.*, Exh. 1(a) at 11.) It promised to "[e]nsure that the information about your business is correct throughout the web" by taking steps to "help your business come up higher in search engines" and "mak[ing] sure your [Google, Bing, and Yelp] profiles say the right things to stand out and get traffic," thus ensuring a "[m]ore accurate and [c]onsistent business listing[]" to help plaintiff "rank higher in a search!" (*Id.*, Exh. 1(a) at 10.)

None of these statements plausibly can be construed to constitute a promise that

6

defendant would prevent its investigative news division from reporting negative stories about plaintiff.  Indeed, nothing set forth in the Amended Complaint suggests defendant's advertising department has any input into or ability to control the output of the news division.  By the terms of the contract, defendant agreed to monitor and manage negative customer reviews of plaintiff's business such as might be found on Yelp or similar online crowd-souring or peer-to-peer outlets, not negative news reports. Accordingly, defendant's motion to dismiss this claim will be granted.

Plaintiff likewise fails to make out a facially plausible claim of breach of the implied covenant of good faith and fair dealing.  "Colorado, like the majority of jurisdictions, recognizes that every contract contains an implied duty of good faith and fair dealing." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995), *as modified on denial of reh'g* (Jan. 16, 1996).  The duty requires parties to deal with one another with "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Id.* (citation and internal quotation marks omitted). However, the doctrine is only applicable where the contract gives one party discretion in the performance or determination of a contractual provision, such as quantity, price, or time. *Id.*  Moreover, because the central precept of contract law remains that "contracts which are free from ambiguity are to be enforced as written," the duty of good faith and fair dealing cannot "contradict terms or conditions for which a party has bargained." *Id.* (citation and internal quotation marks omitted). *See also Integrity Medical Management, LLC v. Surgical Center at Premier, LLC*, 234 F.Supp.3d 1085, 1097 (D. Colo. 2017).

Applying those principles here, the Amended Complaint plainly fails to state a

plausible claim.  To the extent the contract gave defendant discretion in the performance of its "reputation management" responsibilities – a conclusion which is not at all apparent from either the allegations of the Amended Complaint or the terms of the contract – nothing therein could have led plaintiff justifiably to expect defendant had undertaken to prevent the publication of negative news stories about the company, by defendant's own news division or any other.  Because plaintiff cannot rely on the implied duty of good faith and fair dealing to create new terms for which the parties did not bargain, this claim also must be dismissed.

Defendant asks further that this case be dismissed with prejudice because any amendment would be futile.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).  While it may be true, as defendant argues, that any claims plaintiff might bring for defamation, fraud, or negligence would be barred by the applicable statutes of limitation, the appropriate point to make such a determination is when (and if) plaintiff moves for leave to file an amended complaint asserting such claims.  *See Pena v. Greffet*, 108 F.Supp.3d 1030, 1039 n.4 (D.N.M. 2015).

On the other hand, while plaintiff requests the opportunity to amend its complaint yet again to avoid dismissal, it offers nothing to suggest it has additional facts to plead which might establish viable claims of any type.  It strikes the court that if plaintiff had evidence suggesting defendant breached its promises to provide plaintiff with the advertising services contemplated by the contract, it would have alluded to those facts

in its response.[4]  Moreover, dismissing claims without prejudice "is preferable to uncritically permitting the amendment and then analyzing only upon motion to dismiss, because it avoids the situation where a plaintiff ends up filing multiple iterations of his or her complaint trying to correctly plead a claim, and the defendant has to answer or move to dismiss each successive pleading." *Id.*  I find this to be the appropriate course of action here, and therefore dismiss plaintiff's claims without prejudice.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Defendant Scripps Media, Inc.'s Motion To Dismiss Plaintiff's Complaint** [#18], filed April 26, 2022, is granted in part and denied in part as follows:

    a.  That the motion is granted to the extent it seeks dismissal of the claims of the plaintiff; and

    b.  That the motion is denied insofar as it requests dismissal with prejudice;

2.  That the claims of the plaintiff are dismissed without prejudice;

3.  That judgment without prejudice shall enter on behalf of defendant, Scripps Media, Inc. d/b/a/ KOAA TV, d/b/a KOAA, d/b/a NOAA TV, and against plaintiff, Wellness Walk In Tubs, LLC, as to all claims for relief and causes of action asserted herein;

4.  That defendant is awarded its costs, to be taxed by the clerk in the time and

---

[4] Assuming *arguendo* such facts are not more properly presented by way of counterclaim in defendant's state-court suit seeking to collect amounts plaintiff allegedly owes under the contract.  ***See Scripps Media, Inc. v. Wellness Walk In Tubs LLC***, Civil Action No. 2021CV 31551 (El Paso County, Colo.)

manner prescribed by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

    5.  That this case is closed.

Dated June 14, 2022, at Denver, Colorado.

                                                **BY THE COURT:**

                                                Robert E. Blackburn

                                                United States District Judge